# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| PAUL MCMANIGAL, | Case No.:1:16-cv-00324-REB |
| Petitioner, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security | |
| Respondent. | |

Pending is Petitioner Paul McManigal's Petition for Review (Dkt. 1), appealing the
Social Security Administration's final decision to deny his claim for disability and disability
insurance benefits.[1] *See generally* Pet. for Review (Dkt. 1). This action is brought pursuant to
42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised,
the Court enters the following Memorandum Decision and Order:

## I. ADMINISTRATIVE PROCEEDINGS

On November 23, 2012, Paul McManigal ("Petitioner") protectively applied for Title II
disability and disability insurance benefits, and for Title XVI supplemental security income.
Petitioner alleged disability beginning December 10, 2009, which he later amended to August 1,
2012. His claims were denied initially on February 5, 2013 and then again on reconsideration on
September 13, 2013. On September 19, 2013, Petitioner timely filed a Request for Hearing

---

[1] Nancy A. Berryhill became the acting Commissioner of the Social Security
Administration on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil
Procedure, Nancy A. Berryhill is substituted in for Carolyn W. Colvin as the Defendant in this
suit. No further action need be taken to continue this suit by reason of the last sentence of
section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**MEMORANDUM DECISION AND ORDER - 1**

before an Administrative Law Judge ("ALJ").  On October 8, 2014, ALJ Luke A. Brennan held a hearing in Boise, Idaho, during which Petitioner, represented by attorney Taylor Mossman, appeared and testified.  Impartial vocational expert Beth Cunningham also appeared and testified at the hearing.

On December 9, 2014, the ALJ issued a Decision denying Petitioner's claim, concluding that Petitioner was not disabled within the meaning of the Social Security Act.  Petitioner timely requested review from the Appeals Council on or about February 10, 2015 and, on June 8, 2016, the Appeals Council denied Petitioner's Request for Review, making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted his administrative remedies, Petitioner timely filed the instant action, arguing that "[t]he decision denying Petitioner's claim is not in accordance with the purpose and intent of the Social Security Act, nor is it in accordance with the law, nor is it in accordance with the evidence, but contrary thereto and to the facts and against the evidence, in that Petitioner is disabled from performing substantial gainful activity."  Pet. for Review 2 (Dkt. 1).  Petitioner contends the ALJ erred in four ways: (1) by rejecting or ignoring the opinions of treating physicians; (2) by concluding that Petitioner's mental impairments did not satisfy Listing 12.04 for Affective Disorders; (3) by failing to consider all of Petitioner's impairments in concluding he could adjust to other jobs; and (4) by failing to provide clear and convincing reasons for rejecting the credibility of Petitioner and his employer.  Pet'r's Br. 8 (Dkt. 10).  Petitioner requests that the Court remand for an immediate award of benefits.  *Id.* at 20.

## II.  <u>STANDARD OF REVIEW</u>

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Trevizo v. Berryhill*, -- F.3d --, 2017 WL 4053751 at *6 (9th Cir. 2017).  Findings as to any question of fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The standard requires more than a scintilla but less than a preponderance (*Trevizo*, 2017 WL 4053751 at *6), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051.  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Treichler*, 775 F.3d at 1098.  Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig*, 681 F.3d at 1051.  In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

**MEMORANDUM DECISION AND ORDER - 3**

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight must be given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## III. DISCUSSION

### A.     Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of his medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that

**MEMORANDUM DECISION AND ORDER - 4**

Petitioner has not engaged in substantial gainful activity since August 1, 2012, the alleged onset date.[2] (AR 14).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that cause no more than minimal limitation on an individual's ability to work. SSR 96-3p, 1996 WL 374181 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner has the following severe impairments: "schizoaffective disorder, depressive disorder, bipolar II disorder, attention deficit hyperactivity disorder (ADHD), essential hypertension, obstructive sleep apnea, insomnia, asthma, obesity, and diabetes mellitus II." (AR 14).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are

---

[2] Petitioner has a part-time job working one day per week at a floral shop. However, the parties agree this employment does not constitute substantial gainful activity.

awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal a listed impairment, his claim cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the ALJ concluded that Petitioner's above-listed severe impairments do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments. (AR 15).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work he performed within the last 15 years or 15 years prior to the date that disability must be established, as long as the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner has the RFC:

> to lift and/or carry 20 pounds occasionally and 10 pounds frequently. He is able to sit for a total of 6 hours in an 8-hour day, stand a total of 6 hours in an 8-hour day, and walk a total of 6 hours in an 8-hour day. He is able to frequently kneel and occasionally crouch, crawl, and climb ramps and stairs. He should never climb ladders or scaffolds, work at unprotected heights or with mechanical parts, or around dust, odors, fumes, or pulmonary irritants. He can occasionally tolerate exposure to humidity and wetness, extreme heat, and extreme cold. He is able to perform simple, routine tasks and can frequently respond appropriately to supervisors, coworkers, and the public.

(AR 18). He further found that Petitioner is unable to perform any past relevant work. (AR 23).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show

that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).  If the claimant is able to do other work, he is not disabled; if the claimant is not able to do other work and meets the duration requirement, he is disabled.  Here, the ALJ found that there are jobs that exist in significant numbers in the national economy that Petitioner can perform, including motel housekeeper, laundry aide, and parking lot attendant.  (AR 24).  Therefore, based on Petitioner's age, education, work experience, and RFC, the ALJ concluded that Petitioner "has not been under a disability, as defined in the Social Security Act, from August 1, 2012, through the date of this decision."  *Id.*

## B.    Analysis

Petitioner argues the ALJ's decision denying benefits is not supported by substantial evidence and is not based upon the application of the correct legal standards.  Pet'r's Br. 8 (Dkt. 10).  Specifically, Petitioner asserts that the ALJ erred (1) in rejecting or ignoring the opinions of treating providers; (2) in concluding that Petitioner's mental impairments did not meet or equal Listing 12.04 for Affective Disorders; (3) in failing to consider all of Petitioner's impairments when evaluating whether Petitioner could adjust to other jobs; and (4) in failing to provide clear and convincing evidence for rejecting the credibility of Petitioner and his employer.  *Id.*  Each of these assignments of error are considered below.

1.      The ALJ Erred in Rejecting the Opinions of Petitioner's Treating Physicians
        without Providing Specific and Legitimate Reasons Supported by Substantial
        Evidence in the Record.

Petitioner contends the ALJ erroneously rejected the opinions of treating provider Dr.

Sandra Firth, PhD, and completely ignored the opinions of treating provider Dr. Scott Hoopes,

MD.  Pet'r's Br. 8–11 (Dkt. 10).

Importantly, in the world of disability claims, the medical opinion of a treating physician

is entitled to "special weight."  *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989).  This

deference is warranted because the treating physician "is employed to cure and has a greater

opportunity to know and observe the individual."  *Id*.  However, a treating physician's opinion is

not necessarily conclusive.  *Id*. at 762.  Clear and convincing reasons are required to reject a

treating physician's conclusions.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  When

these conclusions are contradicted by another doctor, the ALJ must provide specific and

legitimate reasons, supported by substantial evidence in the record, for rejecting them.  *Id.*

Here, treating physician Dr. Firth saw Petitioner over 60 times between August 2012 and

August 2014; progress notes from more than 50 of these sessions are in the record.  (AR

529–564, 586–655).  Among other things, these notes document Global Assessment of

Functioning (GAF) scores[3] ranging from 31 through 70, with approximately half of the scores at

---

[3]  A GAF score is the clinician's judgment of the individual's overall level of
functioning.  It is rated with respect only to psychological, social, and occupational functioning,
without regard to impairments in functioning due to physical or environmental limitations.  *See*
American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders
(DSM–IV), at 32 (4th ed. 2000).

**MEMORANDUM DECISION AND ORDER - 8**

50 or below.[4]  Scores from the nine sessions that occurred immediately prior to the ALJ hearing were all in the 41–50 range.  (AR 529–538, 557–564).  Dr. Firth also completed a mental residual functional capacity (MRFC) assessment on July 26, 2013.  (AR 493–497).  She indicated in the assessment that Petitioner was "markedly limited" in six areas relating to understanding and memory, sustained concentration and persistence, and adaptation.  *Id.*  Finally, Dr. Firth also documented her medical opinion regarding Petitioner's mental limitations with respect to the "paragraph B" criteria, dated September 9, 2014.  (AR 573–574).  She indicated Petitioner has marked limitations in activities of daily living and extreme limitations in social interaction as well as in concentration, persistence, and pace.  *Id.*  She opined that Petitioner is not capable of engaging in any type of work activity on a full-time basis.  *Id.*

Dr. Hoopes is a treating physician who saw Petitioner several times in 2014.  (AR 516–518, 565–569).  He evaluated Petitioner as having a GAF score of 60 on June 20, 2014.  (AR 516–518).  Dr. Hoopes indicated on an MRFC assessment dated October 8, 2014 that Petitioner is markedly limited in 19 of 20 areas.  (AR 581–583).  He stated that Petitioner's "mood is so depressed and his emotions so labile that he cannot interact with customers or staff . . . He often does not have adequate motivation to get to work.  He cannot sustain the [stress] of a full work day."  *Id.* at 583.  Dr. Hoopes also assessed the "paragraph B" criteria in Petitioner's case on October 7, 2014.  (AR 584–585).  He opined that Petitioner has mild limitations in

---

[4]  A GAF score in the range of 41–50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning (e.g., unable to keep a job).  DSM–IV, at 32.  A GAF score in the range of 51–60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers).  DSM–IV, at 34.  Thus, any GAF score below 51 indicates the treating physician's assessment that the patient has greater than moderate symptoms or difficulty in social or occupational functioning.

activities of daily living, but marked limitations in social interaction as well as in concentration, persistence, and pace. *Id.* at 584. He concluded that Petitioner is not capable of engaging in any type of work activity on a full-time basis. *Id.* at 585. Dr. Hoopes's MRFC assessment and opinion on the "paragraph B" criteria were not in the record before the ALJ when he issued his decision. (AR 366–367).

Dr. Richard Sonnenberg, PhD, performed a consultative examination of Petitioner on January 23, 2013. (AR 428–435). Dr. Sonnenberg assigned Petitioner a GAF score of 60 during the consultation, noting that "[t]he GAF specified above is meant to signify his functioning currently and the difficulties associated with vocational employment during his 'crumbling' time would probably present a lowered score in that regard." (AR 433).

Non-examining physicians Dr. Mack Stephenson, PhD, and Dr. Mark Seidenfeld, PhD, provided consultative reports on February 5, 2013. (AR 81–93, 94–106). On September 11, 2013, Dr. Seidenfeld updated his report on reconsideration. (AR 125–140). Dr. Stephenson considered Dr. Sonnenberg's report but did not consider opinions from any treating providers. (AR 82–84). Initially Dr. Seidenfeld considered Dr. Sonnenberg's report without also considering opinions from any treating providers, but on reconsideration he also looked at Dr. Firth's MRFC assessment. (AR 95–97, AR 127–128). Dr. Stephenson and Dr. Seidenfeld each concluded that Petitioner is not disabled. (AR 105, 123). On reconsideration, Dr. Seidenfeld maintained his conclusion that Petitioner is not disabled, finding that Dr. Firth's MRFC assessment documenting marked limitations was "not consistent with or supported by the medical records." (AR 133).

The ALJ's written decision concludes that Petitioner suffers from "moderate difficulties" in social functioning and in concentration, persistence, or pace. (AR 15–17). In support of these conclusions, the ALJ refers to the consultative examination performed by Dr. Sonnenberg. *Id.* He does not, however, refer directly to the opinions or records supplied by Petitioner's treating physicians Dr. Firth or Dr. Hoopes to support these particular conclusions. Elsewhere in the decision he noted he had "assigned great weight" to Dr. Sonnenberg's examination and that Dr. Sonnenberg's assessment was "consistent with the evidence overall." (AR 21). In support, the ALJ cited to medical records authored by treating physician Dr. Firth (and others), "including mental status examinations showing that there were times (particularly during times of extreme stress) when the claimant did struggle in the areas of social functioning and concentration, persistence, and pace, but that he typically had good concentration, memory, communication, and social skills." *Id.*

But the ALJ assigned only "[p]artial weight" to Dr. Firth's MRFC assessment and "little weight" to her medical opinion. *Id.* He found her opinion in the MRFC assessment was "not well explained" and appeared to evaluate Petitioner's functioning only during times of stress rather than on a daily basis. *Id.* He also took issue with her opinion that Petitioner would have marked limitation using public transportation, which he found inconsistent with Petitioner's own report that he did use public transportation. *Id.* The ALJ also found Dr. Firth's opinion indicating extreme "paragraph B" findings were inconsistent with the evidence. *Id.* He found that Petitioner's ability to work in a floral shop one day per week demonstrated Petitioner does not suffer from marked limitations in social functioning or concentration. *Id.* He further found her opinion inconsistent when compared with "numerous mental status examinations within the

record indicating that [Petitioner's] concentration and memory were good and that he generally interacted and communicated appropriately." *Id.* Some of the mental status examinations to which the ALJ cited were internally inconsistent or ambiguous, while others were silent on concentration, memory, and social interaction. Finally, the ALJ found that the Petitioner's reports of making necklaces, sewing, and being an avid reader were inconsistent with Dr. Firth's opinion. *Id.*

Because no opinions by treating provider Dr. Hoopes were in the record when the ALJ issued his decision, they were not considered. However, the ALJ did cite various earlier medical records signed by Dr. Hoopes.

Petitioner argues the ALJ erroneously rejected Dr. Firth's opinions and ignored Dr. Hoopes's opinions. He faults the ALJ for limiting the weight of his treating providers' opinions without providing specific and legitimate reasons for doing so. More particularly, he challenges the sufficiency of the evidence upon which the ALJ relied in giving greater weight to the opinion of examining physician Dr. Sonnenberg than to the opinions of his treating providers.

Petitioner's arguments on this issue are well-taken. The record does not show that Dr. Sonnenberg (or, for that matter, the non-examining physicians Dr. Stephenson and Dr. Seidenfeld) reviewed the more than 50 records of Dr. Firth's sessions with Petitioner.[5] These records are not inconsistent with Dr. Firth's opinions. More significantly, and despite the ALJ's declaration that his decision was based on "careful consideration of all the evidence," (AR 12), the ALJ made no attempt to reconcile his conclusion that Dr. Firth's opinions were inconsistent

---

[5] Indeed, it is impossible that the consultative physicians could have reviewed some of the relevant records, which did not yet exist when they prepared their opinions.

**MEMORANDUM DECISION AND ORDER - 12**

with the medical evidence of record containing dozens of reports of Petitioner's low GAF scores.

GAF scores are not dispositive of a petitioner's disability. But the ALJ's failure to address the evidence of over 25 instances where Dr. Firth recorded GAF scores below 50 means that he did not meet his burden to provide specific and legitimate reasons for rejecting her opinion. Respondent correctly points out that "the ALJ does not need to discuss every piece of evidence." Resp't's Br. 12 (Dkt. 11) (quoting *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (quotation marks omitted)). But reversal for failure to address particular evidence is proper where, as here, the ALJ dismissed without a sufficient basis or simply did not address numerous medical records supporting a treating provider's opinion. The Court is mindful that there could be a proper basis for the ALJ to reject Dr. Firth's opinions, despite the fact that her reports of consistently low GAF scores support her ultimate opinion that Petitioner is markedly limited. But nothing in the ALJ's decision indicates he properly considered the scores before concluding that Dr. Firth's opinions are inconsistent with the medical records. Therefore, his rejection of Dr. Firth's opinions was not supported by substantial evidence and is grounds to reverse and remand.

This conclusion is further supported when Dr. Hoopes's opinions are considered. Respondent argues that opinions obtained after an ALJ has denied disability are not persuasive. Resp't's Br. 10 (Dkt. 11). It is sensible to give less weight to opinions obtained only after an adverse decision by an ALJ. However, that is not the case here. The record reflects that Dr. Hoopes's offered his opinion on the "paragraph B" criteria on October 7, 2014 and his MRFC assessment on October 8, 2014. (AR 581–585). The ALJ decision was filed December 9, 2014, more than two months later. (AR 24). It is true that Dr. Hoopes's opinions were not entered into

the record until Petitioner challenged the ALJ decision to the Appeals Council (AR 1–2, 8). But because Dr. Hoopes's opinions were obtained prior to the adverse ALJ decision, they cannot fairly be read as an attempt to dispute or undermine that decision itself. Accordingly, they should receive the same weight as any other opinions by a treating physician. More importantly, Dr. Hoopes's opinions are generally consistent with Dr. Firth's opinions. That fact strengthens the case that the ALJ erred in failing to provide specific and legitimate reasons supported by substantial evidence for his rejection of Dr. Firth's opinions.

On this basis, the case is reversed and remanded.

2. <u>Because the Case Is Remanded on a Related Issue, This Court Will Not Rule Now on Whether the ALJ Erred in Concluding that Petitioner's Mental Impairments Do Not Meet or Equal Listing 12.04.</u>

Petitioner contends the ALJ erred in the third step of the five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. Pet'r's Br. 11–15 (Dkt. 10). He asserts the ALJ "committed reversible error when he picked out of context pieces of the record to determine that [Petitioner] was not markedly limited in the Paragraph B categories." *Id.* at 15.

The "paragraph B" to which Petitioner refers is contained within Section 12.04 of Appendix 1 to 20 C.F.R. Part 404, Subpart P. It addresses depressive, bipolar, and related disorders. A claimant can prove disability by showing he or she satisfies the criteria in paragraph A and either paragraph B or paragraph C of that section. Here, Petitioner asserts the ALJ erred in concluding that he does not satisfy the "paragraph B" criteria under section 12.04. Paragraphs A and C are not at issue here.

**MEMORANDUM DECISION AND ORDER - 14**

The ALJ's conclusions regarding the "paragraph B" criteria are reviewed for substantial evidence. 42 U.S.C. § 405(g); *Trevizo*, 2017 WL 4053751 at *6. A reviewing court "do[es] not retry the case or alter credibility determinations and factual findings where the evidence is susceptible of more than one rational interpretation." *Moncada v. Chater*, 60 F.3d 521, 525 (9th Cir. 1995).

As noted above, the ALJ's decision in this case is being reversed and remanded due to the ALJ's failure to provide substantial evidence supporting his rejection of the opinions of Petitioner's treating physicians. Those opinions bear on the "paragraph B" criteria. On remand, the ALJ may reconsider the weight to assign to the opinions or he may once again reject them, so long as he provides substantial evidence for doing so. With respect to the instant issue, because on remand the ALJ could reach a different conclusion or discuss the evidence differently, the Court need not, and does not, rule on it now.

3. <u>Petitioner has not shown the ALJ Erred by Failing to Consider All of Petitioner's Impairments When Determining Whether He Could Adjust to Other Jobs.</u>

Petitioner contends the ALJ erred in the fourth step of the five-step process by assigning Petitioner a residual functional capacity (RFC) that is not supported by the evidence. Pet'r's Br. 15–17 (Dkt. 10). At issue is the ALJ's finding that Petitioner can frequently respond appropriately to supervisors, coworkers, and the public. (AR 18).

Petitioner asserts the ALJ's RFC finding did not adequately address either the mental limitations expressed by Petitioner's treating physicians or the effects of Petitioner's diabetes on his limitations. Pet'r's Br. 16 (Dkt. 10). Because Petitioner does not offer argument in support of his assertion that the ALJ erred by failing to consider the effects of his diabetes, that issue is

deemed waived and will not be addressed.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

Petitioner offers three arguments supporting his assertion that the ALJ erred in finding that he "can frequently respond appropriately to supervisors, coworkers, and the public."  First, he contends that the records and opinions of treating physician Dr. Firth show Petitioner lacks the RFC to perform or sustain full-time work due to his limitations.  *Id.*  This Memorandum Decision and Order has already addressed the import of Dr. Firth's records and opinions. Because this case is reversed and remanded for the ALJ to issue a new decision properly addressing Dr. Firth's opinions, the Court need not and does not address this argument today.

Second, Petitioner contends the ALJ ignored the testimony of a vocational expert ("VE") at the hearing.  *Id.* at 17.  Petitioner suggests the VE testified that Petitioner "would need an accommodation or a sympathetic employer like he's found" in order to work in a job around other people, and that such accommodations are atypical.  *Id.* at 17 (quoting AR 75–78).  This argument does not accurately capture the VE's testimony.  Although the quote highlighted by Petitioner does refer to the Petitioner, it does so in the context of the ALJ inquiring about a "hypothetical individual the same age, education, and work experience as [Petitioner]," who "can *occasionally* respond appropriately to supervisors, coworkers, and the public."  (AR 74–75) (emphasis added).  This is significant because the very next question posed by the ALJ changed the hypothetical from a person who can "occasionally" respond appropriately to a person who can "frequently" respond appropriately to others.  (AR 76).  The VE testified that there are jobs in the national or regional economy for a person who can frequently respond appropriately to others.  *Id.*  The VE was not asked to express an opinion on whether Petitioner himself would

require employer accommodations to work in the national or regional economy. She did testify that Petitioner is being accommodated by his present employer and that these accommodations are atypical. (AR 77–78). But she did not otherwise opine directly on Petitioner or his limitations. The ALJ's ultimate finding regarding Petitioner's RFC was that he "can *frequently* respond appropriately to supervisors, coworkers, and the public." (AR 18) (emphasis added). In light of this finding, which is consistent with the VE's testimony, Petitioner's argument that the ALJ ignored the VE's testimony is without merit and offers no basis for reversal.

Third, Petitioner contends that his testimony and written statements, and the testimony of his employer, should be given full credibility. Pet'r's Br. 17 (Dkt. 10). He asserts that the ALJ's finding regarding his RFC would be undermined if this evidence were given its proper credibility. *Id.* Because this argument mirrors the fourth and final assertion of error Petitioner raises, it will be addressed in that section.

4.      The ALJ Properly Evaluated the Credibility of Petitioner and the Employer.

Petitioner contends the ALJ's rejection of his credibility was improper because it was not supported by specific, clear, and convincing reasons. Pet'r's Br. 17–19 (Dkt. 10).

As the trier-of-fact, the ALJ is in the best position to make credibility determinations and, for this reason, his determinations are entitled to great weight. *See Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities). In evaluating a claimant's credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including consideration of claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and

conduct, as well as claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958–60 (9th Cir. 2002). Also, the ALJ may consider location, duration, and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms. *See* SSR 96-3p, 1996 WL 374181 (July 2, 1996). In short, "[c]redibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). To reject a claimant's testimony, the ALJ must make specific findings stating clear and convincing reasons for doing so. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citing *Reddick*, 157 F.3d at 722).

Here, the ALJ found that Petitioner's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (AR 19). He followed this up with specific examples of inconsistencies between Petitioner's allegations and evidence in the record:

> [Petitioner] did report that he had to be reminded to take his medications and shower. However, his step-mother reported that he did not need reminders to do those things and he, himself, admitted that checking his blood sugars and taking his pills and insulin was part of his daily routine after waking up (Exhibits 4E, 5E & 12E). He testified that he sometimes went four or five days without showering, yet the evidence of record did not support that claim as he typically had good grooming and was dressed appropriately (Exhibits 4F, 9F, 11F, & 13F). His allegations that he was limited in his ability to reach and lift also were not corroborated. There was no evidence that he had any limitations with strength or range of motion in his upper extremities and his ability to perform daily activities such as laundry, cooking, and grocery shopping showed that he was capable of reaching and lifting at least light items (Exhibits 4E, 2F, & 10F).
>
> His testimony that he suffered with extreme fatigue, nausea, dizziness, confusion, and pain in his feet due to his diabetic condition was also inconsistent with the evidence. During examinations, he typically denied fatigue, nausea,

dizziness, altered mental status, foot ulcers, and pain in his feet. He also had a normal gait and was able to stand without difficulty (Exhibits 2F, 5F, 8F, & 9F) . . . .

. . . .

. . . The claimant was also inconsistent in his reports of how good his relationships were with other people. He testified that interactions were difficult with his step-mother, yet he reported during the consultative examination with Dr. Sonnenberg that he had close ties with her. Her report that they went shopping together, visited regularly, and that she was teaching him to sew, was also inconsistent with his report of having problems in that relationship. . . .

(AR 19–20).

Petitioner contends the ALJ erred in failing to provide specific, clear, and convincing reasons for rejecting Petitioner's credibility, citing two portions of the ALJ decision in support of his argument. Pet'r's Br. 18–19 (Dkt. 10). First, he notes the ALJ stated "based on his testimony, it appeared that his problems getting along and interacting with others was not significant enough to warrant reprimands and likely was not as severe as the claimant alleged." *Id.* (quoting AR 20). Petitioner cites his own hearing testimony that he was fired from a job at Walmart for voicing his negative opinion about an employee-of-the-month program, which he now claims would qualify as a reprimand. *Id.* (citing AR 48). However, the context immediately prior to Petitioner's testimony on this point paints a more complete picture:

> Q [by ALJ] Did you get in verbal altercations with the coworkers?
> A [by Petitioner] I did on a couple of occasions.
> Q Okay. Did you ever get reprimanded or in trouble for that?
> A No, not really.

(AR 47). From there, Petitioner went on to describe his termination from Walmart. (AR 47–48). Petitioner's argument now that his termination qualifies as a reprimand is inconsistent with his own testimony that he was not reprimanded. At any rate, the ALJ taking Petitioner at his word that he was not reprimanded cannot now support Petitioner's assertion that the ALJ improperly

rejected his credibility – as to this issue, the ALJ actually *agreed* with Petitioner's own

testimony that Petitioner was not reprimanded.

Second, Petitioner asserts that "[t]he ALJ denied [Petitioner's] credibility based on the

fact that [Petitioner] was learning how to sew, liked to make crafts, and read novels, therefore he

could concentrate well enough to work." *Id.* at 19 (quoting AR 20). This argument conflates the

ALJ's assessment of Petitioner's credibility with his evaluation of Petitioner's limitations. The

ALJ stated that

> [t]he fact that [Petitioner] was able to concentrate long enough and remember how
> to perform activities like creating schedules and floral arrangements, making
> necklaces and other crafts, sew, read, and use public transportation and was also
> entrusted to handle money and give change at work showed that he typically had
> good concentration and memory (Exhibits 4E, 11E, & testimony).
>   . . . The fact that the claimant did struggle, at times, with his ability to
> concentrate and remember but was capable of regularly participating in activities that
> required good concentration and memory, such as creating floral arrangements,
> reading, sewing, and making crafts, was consistent with limiting him to simple,
> routine tasks as indicated in the RFC.

(AR 20–21).

Nothing in either of these paragraphs addresses Petitioner's credibility or the ALJ's

evaluation thereof. Rather, the ALJ was documenting his analysis and conclusions about

Petitioner's concentration and memory. To the extent Petitioner's argument may be read as

suggesting that the ALJ's evaluation of Petitioner's concentration and memory constitutes an

implicit rejection of Petitioner's credibility, it is unpersuasive.

Petitioner offers no other examples of instances where the ALJ may have improperly

rejected his credibility. Nor does he offer any argument at all in support of his assertion that the

ALJ improperly rejected the credibility of his employer, Ms. Rita Harris. Petitioner has not

shown the ALJ erred by rejecting Petitioner's credibility. Because the ALJ decision is entitled to

deference on review, and because it includes uncontested examples of specific reasons for rejecting Petitioner's credibility, the decision will not be disturbed on the basis the ALJ erred by rejecting Petitioner's credibility.

## IV.  CONCLUSION

Petitioner has not shown that the ALJ erred (1) in concluding that Petitioner's mental impairments do not meet or equal Listing 12.04, (2) in evaluating whether Petitioner could adjust to jobs in the national economy; or (3) in rejecting the credibility of Petitioner or his employer. However, Petitioner has shown that the ALJ erred by failing to offer specific and legitimate reasons for rejecting the medical opinions of treating physicians Dr. Sandra Firth and Dr. Scott Hoopes.  Accordingly, his decision is not supported by substantial evidence and remand is required.

## V.  ORDER

Based on the foregoing, the Petition for Review (Dkt. 1) is **GRANTED**, the decision of the Commissioner of Social Security is **REVERSED**, and this case is **REMANDED** to the Commissioner of Social Security under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED:  **September 29, 2017**

Honorable Ronald E. Bush
Chief U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 21**